UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Select Comfort Corporation,

    Plaintiff,

v.

Arrowood Indemnity Company,           No. 13-cv-2975 (JNE/FLN)
                                          ORDER
    Defendant and Third-Party Plaintiff,

v.

St. Paul Mercury Insurance Company,

    Third-Party Defendant.

---

This matter is before the Court on Plaintiff Select Comfort Corporation's Amended Motion for an Award of Attorneys' Fees, Costs, and Interest from Defendant Arrowood Indemnity Company. For the reasons and in the manner discussed below, the motion is granted in part and denied in part.

## Background

This case arose out of a dispute over Arrowood's duty to defend Select Comfort against a putative class action lawsuit. Select Comfort is the maker of the Sleep Number bed, and Arrowood is an insurance company from which it had purchased two commercial general liability ("CGL") policies for the years 2001-02 and 2002-03.

The underlying case, referred to as the *Stearns* litigation, was brought against Select Comfort in California in 2008. That suit included claims by several co-plaintiffs who alleged that they had suffered health problems from mold in the Sleep Number beds they had purchased

1

over roughly the prior two decades. Select Comfort tendered its defense of that matter to several insurers with whom it held liability policies during the time period implicated by those claims. Among those insurers was Arrowood, which accepted Select Comfort's tender with a reservation of rights.

Select Comfort took the position that Arrowood's reservation of rights created a conflict of interest in the defense of the *Stearns* action, thereby converting Arrowood's obligation to provide Select Comfort with a defense into an obligation to pay Select Comfort for the reasonable attorneys' fees and costs it incurred in defending itself. Accordingly, Select Comfort rebuffed Arrowood's plan to select defense counsel for the *Stearns* matter and retained counsel of its own choosing from the law firm of Oppenheimer Wolff & Donnelly, with attorneys from the firm of Pillsbury Winthrop Shaw Pittman serving as local counsel. Arrowood disagreed with the position Select Comfort took regarding its reservation of rights, but agreed to reimburse Select Comfort for some of the defense fees and costs that would be incurred through Oppenheimer and Pillsbury Winthrop.

The *Stearns* litigation then proceeded over the next several years. Select Comfort successfully resisted class certification and, in the summer of 2012, reached a settlement with the individual co-plaintiffs. During the mediation that produced the settlement, Arrowood agreed to pay 33% of the total, with Select Comfort paying the remaining 67%.

All told, Oppenheimer and Pillsbury Winthrop billed Select Comfort for a total of $1,033,780 in attorneys' fees and costs for the *Stearns* defense. Arrowood and two other of Select Comfort's insurers paid approximately half of that amount – $557,252 – over the course of the litigation, while Select Comfort paid the balance to the firms.

In 2013, more than a year after the *Stearns* case settled, Select Comfort commenced this action against Arrowood, seeking to recover from it the approximately $500,000 in defense costs that it had paid to the law firms. In its Complaint, Select Comfort pled two counts: at Count I, a claim that "Arrowood has breached the [CGL] Policies by wrongfully refusing to reimburse Select Comfort for approximately half a million dollars that Select Comfort paid in reasonable and necessary defense fees and costs that were incurred in defending the Stearns Action"; and at Count II, a request for "a judicial declaration that Arrowood has a duty to fully reimburse Select Comfort for its reasonable and necessary fees and costs incurred by Select Comfort in defending the Stearns Action through independent counsel retained by Select Comfort."

Soon after Arrowood answered the Complaint, Select Comfort moved for a "partial summary judgment declaring that . . . Arrowood['s] reservation of rights created a conflict of interest, which precluded Arrowood from selecting defense counsel and controlling Select Comfort's defense of the [*Stearns*] lawsuit . . . ." Finding the record undeveloped and the motion premature, the Court denied it without prejudice.

Arrowood then filed a Third-Party Complaint against the other insurance companies from whom Select Comfort had purchased liability policies during the time period implicated by the *Stearns* plaintiffs' claims. Over eight counts, Arrowood asserted claims against those other insurers for contribution with respect to the amounts it paid towards both the *Stearns* defense costs and the settlement. Within weeks of that filing, Arrowood also moved for leave to amend its Answer in order to assert a counterclaim against Select Comfort for reimbursement of an amount that it believed it had "overpaid" towards the *Stearns* settlement.

With that motion for leave to amend pending, Select Comfort refiled its motion for partial summary judgment on the conflict of interest issue. Arrowood responded with a cross-motion in

3

which it sought a "summary judgment declaring that Arrowood's coverage position did not create a conflict of interest such that Arrowood was precluded from selecting defense counsel and controlling the defense of the [*Stearns*] lawsuit . . . ." As those motions were being briefed, Arrowood's motion for leave to amend its Answer was granted, and Arrowood accordingly filed its counterclaim for reimbursement against Select Comfort. When the dispositive cross-motions were heard, the Court found that the manner in which Arrowood had reserved its right to challenge whether the *Stearns* action was covered by its CGL policies created "a conflict of interest . . . that converted [Arrowood's] duty to defend into a duty to reimburse the reasonable costs of [the] separate counsel" at Oppenheimer and Pillsbury Winthrop that Select Comfort had hired to defend it. The Court therefore granted Select Comfort's motion for partial summary judgment and denied Arrowood's motion for summary judgment.

Within days of that decision, Select Comfort filed a motion for summary judgment on Arrowood's counterclaim and a motion to exclude the testimony of Arrowood's expert witness. The Court denied Select Comfort's *Daubert* motion and granted its summary judgment motion, finding that Arrowood's pursuit of reimbursement from Select Comfort for money it had unconditionally paid towards the *Stearns* settlement did not constitute a viable claim.

The cumulative effect of these rulings was to leave only Select Comfort's breach of contract claim against Arrowood for trial, which took place over four days in April of 2015. On April 10, 2015, the jury returned a special verdict in which it found: (1) that Select Comfort had carried its burden of proving that the total amount of attorneys' fees and costs that were reasonable and necessary to defend it in the *Stearns* action was more than the $557,252 it had been reimbursed by Arrowood and the two other insurers; (2) that the total amount of attorneys' fees and costs that were reasonable and necessary to the *Stearns* defense was $964,252; and (3)

that Select Comfort would therefore recover the $407,000 difference from Arrowood. After Arrowood subsequently resolved its outstanding third-party claims against Select Comfort's other insurers, judgment was entered in accordance with the jury's special verdict on June 30, 2015.

## Discussion

With the motion now before the Court, Select Comfort seeks (1) the addition of pre- and post-judgment interest to the $407,000 it was awarded in accordance with the jury's special verdict and (2) an award of $849,208, plus pre- and post-judgment interest, for the attorneys' fees and costs that it incurred in bringing this case. The Court will address these two aspects of the motion in turn.

### I. Jury award.

First, Select Comfort's moves under Federal Rule of Civil Procedure 59(e) to add pre- and post-judgment interest to the $407,000 it recovers from Arrowood as a result of the jury's special verdict.

In a diversity case such as this, pre-judgment interest is awarded in accordance with state law. *Schwan's Sales Enters. v. SIG Pack, Inc.,* 476 F.3d 594, 595 (8th Cir. 2007). To determine which state's law applies, courts "look to the conflict-of-law principles of the state where the district court sits." *Id.* Under Minnesota's conflict-of-law rules, "if the law is procedural, then we apply the law of the forum state." *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995). Because "the issue of prejudgment interest . . . is a procedural matter for conflict-of-laws

5

purposes under Minnesota law," *Schwan's*, 476 F.3d at 595, Minnesota's pre-judgment interest statute applies.

And indeed, Select Comfort and Arrowood agree that Minn. Stat. § 60A.0811 "exclusively governs" Select Comfort's request for pre-judgment interest on its $407,000 recovery. They disagree, however, about its application to the facts of this case. That statute reads as follows:

> An insured who prevails in any claim against an insurer based on the insurer's breach or repudiation of, or failure to fulfill, a duty to provide services or make payments is entitled to recover ten percent per annum interest on monetary amounts due under the insurance policy, calculated from the date the request for payment of those benefits was made to the insurer.

The parties' dispute two issues: (1) whether Arrowood "breach[ed] or repudiat[ed], or fail[ed] to fulfill, a duty to provide services or make payments" to Select Comfort; and (2) on what date Select Comfort made the requisite "request for payment of those benefits."

On the first issue, Arrowood contends that Select Comfort is not entitled to pre-judgment interest because "there is no evidence, verdict, or finding that Arrowood 'breached,' 'repudiated,' or 'failed to fulfill a duty' to Select Comfort . . . ." This argument is wholly without merit. The *Stearns* action was covered by the two CGL policies Select Comfort purchased from Arrowood. Consequently, Arrowood had a duty to defend Select Comfort. The manner in which Arrowood reserved its right to challenge coverage converted that duty from an obligation to manage the litigation by selecting and paying defense counsel directly into an obligation to reimburse Select Comfort for the reasonable and necessary cost of mounting its own defense. The jury determined that cost to be $964,252. Select Comfort, though, only received $557,252. Arrowood thus breached its "duty to provide services or make payments" to Select Comfort, and it is liable, as damages resulting from that breach, for the $407,000

6

difference between what Select Comfort should have been and was reimbursed during the course of the *Stearns* litigation.

Under Minn. Stat. § 60A.0811, then, Select Comfort is entitled "to recover ten percent per annum interest on" that $407,000, "calculated from the date the request for payment of those benefits was made to" Arrowood. Select Comfort asserts that that date was June 11, 2008, when it first submitted an invoice to Arrowood for the cost of its *Stearns* defense. (Select Comfort indicates that it first requested that Arrowood pay all of its *Stearns* defense costs on May 14, 2008, but "conservatively uses June 11, 2008 as the date from which prejudgment interest is to be calculated in this case.") Arrowood, however, contends that the proper date is September 23, 2013, when Select Comfort sent it a demand letter in which it recounted that the two parties had "disagreed from the outset [of the *Stearns* case] regarding the rates at which Arrowood should reimburse Select Comfort for the fees incurred by its defense counsel" and proposed that, "[n]ow that the [*Stearns*] case has been resolved and all defense fees have been incurred, this is an appropriate time to resolve this outstanding dispute concerning the unreimbursed fees and costs."

Arrowood's position has some appeal, insofar as pre-judgment interest was understood at Minnesota common law as a means of compensating a party recovering a money judgment for the loss of the use of its own money. *See, e.g., Jostens, Inc. v. CNA Ins., Continental Cas. Co.*, 336 N.W.2d 544, 546 (Minn. 1983). As Select Comfort had obviously incurred only a very small fraction of its total *Stearns* defense costs when it sent Arrowood the first invoice on June 11, 2008, awarding pre-judgment interest on the full $407,000 recovery from that point forward results in over-compensation.

Nevertheless, it is well established with the passage of pre-judgment interest statutes that "full compensation is not the exclusive purpose of prejudgment interest in Minnesota" –

"provid[ing] a motivation to settle" is as well. *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 918 (8th Cir. 2005) (analyzing Minn. Stat. § 549.09). Construing Minn. Stat. § 60A.0811 in light of that principle in an analogous case, the Eighth Circuit expressly approved of the type of pre-judgment interest calculation that Select Comfort seeks here. *Avon State Bank v. BancInsure, Inc.*, 787 F.3d 952, 960 (8th Cir. 2015). The Eighth Circuit noted that it "has recognized the possibility of overcompensation when prejudgment interest is awarded pursuant to Minnesota law," and it affirmed a district court order that "calculat[ed] prejudgment interest from the date [the insured first] requested indemnification, rather than from the date [the insured] actually paid the settlement and defense costs." *Avon State Bank v. BancInsure, Inc.*, 787 F.3d 952, 960 (8th Cir. 2015). Arrowood does not deny that Select Comfort requested full reimbursement of its *Stearns* defense costs from the outset of that litigation, and the Court will therefore use June 11, 2008 as the starting point for the calculation of pre-judgment interest.

As for post-judgment interest, Select Comfort argues that it is entitled to the 10% per annum rate called for by Minn. Stat. § 549.09, subdivision 2. However, in a diversity case, post-judgment interest is governed by federal law. *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, Pa.*, 735 F.3d 993, 1007 (8th Cir. 2013) (finding that a "conspicuous request for postjudgment interest is [not] fatally flawed . . . merely by the failure to cite to federal law"). Under 28 U.S.C. § 1961, post-judgment "interest shall be allowed on any money judgment in a civil case recovered in a district court." That interest is to be "calculated from the date of the entry of judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" and is to be "computed daily to the date of payment." 28 U.S.C. § 1961(a-b).

8

Therefore, the Court will amend the judgment to reflect that, in this aspect of the case, Select Comfort recovers $699,633 from Arrowood, with post-judgment interest accruing on that amount at the applicable federal interest rate under 28 U.S.C. § 1961 from the date judgment is entered in accordance with this order until payment is made. That $699,633 consists of the $407,000 awarded in accordance with the jury's special verdict, plus $292,633 in pre-judgment interest on that amount, calculated at a rate of 10% per annum from June 11, 2008 through August 19, 2015 pursuant to Minn. Stat. § 60A.0811.

## II. Attorneys' fees and expenses.

In addition to seeking interest on its $407,000 recovery from Arrowood, Select Comfort also moves under Federal Rule of Civil Procedure 54(d) for an award of $849,208, plus pre- and post-judgment interest, for the attorneys' fees and expenses that it incurred in this action.

Select Comfort argues that it is entitled to this award under the line of Minnesota cases, originating with *Morrison v. Swenson*, 142 N.W.2d 640 (1966), that hold that attorneys' "[f]ees incurred [by the insured] as a direct result of an insurer's breach of the contractual duty to defend are part of the damages owed by the breaching insurer" and are therefore recoverable. *T.A. Schifsky & Sons, Inc. v. Bahr Const., LLC*, 773 N.W.2d 783, 789 (Minn. 2009). The Minnesota Supreme Court has explained the contours of this rule as follows:

> Under Minnesota's common law, "each party bears [its] own attorney fees in the absence of a statutory or contractual exception." *Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000); *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 714 (Minn.1991) (noting that for over 100 years it has been the law in Minnesota that attorney fees are only recoverable by a prevailing party when there is statutory authorization or a contractual agreement allowing those fees). However, in the insurance context, we have carved out a narrow exception to the general rule: attorney fees are recoverable when an insurer breaches its duty to defend. *See Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966).

9

> In *Morrison,* the insured commenced a declaratory judgment action against his insurance company to force it to defend him in a personal injury action. 274 Minn. at 132, 142 N.W.2d at 644. We affirmed the district court's determination that the insurance company was required to defend. 274 Minn. at 137, 142 N.W.2d at 647. Turning to the issue of whether the insured could recover the attorney fees he incurred in the declaratory judgment action, we recognized that, absent statutory authorization, attorney fees are generally not recoverable. *Id.* However, we awarded the insured attorney fees for the following reasons:
>
>> [T]his action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as the result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract.
>
> 274 Minn. at 138, 142 N.W.2d at 647.
>
> In *Abbey v. Farmers Insurance Exchange,* we clarified our holding in *Morrison* and concluded that, absent statutory authorization, an insured's ability to recover attorney fees is limited to situations where the insurer has breached its contractual duty to defend. 281 Minn. 113, 119, 160 N.W.2d 709, 712 (1968) (holding that where the insured was seeking recovery of disability benefits from the insurer, the *Morrison* exception did not allow the insured to recover attorney fees incurred in his declaratory judgment action against the insurer). In subsequent cases, we have similarly refused to extend the *Morrison* exception. *See Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co.,* 285 Minn. 264, 268-69, 173 N.W.2d 9, 12 (1969) ("[A]bsent statutory authority or specific provision in the insurance contract itself, the insured may not recover attorneys' fees incurred in an action against the insurer to establish coverage under an insurance policy."); *Garrick,* 469 N.W.2d at 714 (holding that Minn.Stat. § 555.08 (1990) could not be extended to provide attorney fees "beyond the typical *Morrison*-type exception, i.e., fees incurred as a direct loss incident to the breach of a contractual duty to defend").

*In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 422-23 (Minn. 2003).

Arrowood contends that an award of fees and expenses is not available to Select Comfort under the *Morrison* exception because it did not breach its contractual duty to defend. In this respect, Arrowood emphasizes that: it never disputed that the *Stearns* lawsuit was covered by the two CGL policies Select Comfort purchased from it; it accepted Select Comfort's tender at the outset of the *Stearns* litigation and agreed to provide it with a defense, subject to a reservation of

10

rights; and, after Select Comfort subsequently rejected its efforts to select and pay defense counsel itself, it reimbursed Select Comfort over the course of the *Stearns* case for what it believed to be the reasonable cost of the defense.

However, these facts do not push this case outside of the scope of the *Morrison* exception. Arrowood attempts to take advantage of the distinction the Minnesota Supreme Court drew in *In re Silicone Implant Insurance Coverage Litigation* between an insurer's contractual duty to provide the insured with a defense to a covered lawsuit and an insurer's contractual duty to reimburse the insured for the defense costs it incurs in a covered lawsuit. There, the court clarified that an insurer's breach of the former duty, which is designed to relieve the insured of all of the burdens of litigation, does trigger a fee award under the *Morrison* exception, while an insurer's breach of the latter duty, by which the insured is to be relieved of the burden of paying for the underlying defense but not of the responsibility to "hire an attorney and manage the underlying litigation," does not. *Id.* at 425. Because the insurance policy at issue in that case imposed on the insurer only the duty to reimburse the insured for its defense costs, and not a duty to defend the insured, the court found that fees were not recoverable under the *Morrison* exception. *Id.* at 423-25 ("Here, . . . the insurers did not have a duty to defend . . . [The insured] argues that it is entitled to an award of attorney fees on the ground that the insurers breached their contractual duty to reimburse [the insured] for its defense costs and therefore the insurers acted in violation of their implied covenant of good faith and fair dealing.").

This does no work for Arrowood here. There has never been any question that the CGL policies at issue here *do* obligate Arrowood to defend Select Comfort against a covered lawsuit; indeed, Arrowood itself emphasizes that point. This is not a case like *In re Silicone Implant Insurance Coverage Litigation* where the policy obligated the insurer only to reimburse the

insured for its defense costs. Arrowood's duty to reimburse Select Comfort arose from the conflict of interest created by its reservation of rights. Such a "conflict of interest does not relieve [the insurer] of its duty to defend, but rather transforms that duty into the duty to reimburse [the insured] for reasonable attorneys' fees incurred in defending the lawsuit." *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 391 (Minn. 1979). Thus, in these circumstances, Arrowood's duty to reimburse cannot be distinguished from its contractual duty to defend; it is one and the same with it. *See Chicago Title Ins. Co. v. F.D.I.C.*, 172 F.3d 601, 606 (8th Cir. 1999) ("Chicago Title had a duty to defend the FDIC by providing the defense *or* reimbursing the defense fees and costs.") (emphasis added).

As the Eighth Circuit has observed in applying Minnesota law, "[a] breach of the contractual duty to defend usually occurs by 'wrongfully refusing to defend the insured'" – in other words, by refusing the insured's tender of its defense. *Id.* at 605 (quoting *American Standard Ins. Co. v. Le*, 551 N.W.2d 923, 927 (Minn. 1996)). But, contrary to Arrowood's argument, that is not the only way an insurer can breach the contractual duty to defend. Arrowood breached that duty here by failing to reimburse Select Comfort for $407,000 of the $964,252 it cost to defend itself from the *Stearns* case. The fees and expenses Select Comfort incurred in enforcing Arrowood's contractual duty to defend through this action are recoverable under the *Morrison* exception as a direct loss incident to that breach.[1]

This leaves two issues to be resolved: the amount of the award, and whether and how interest should accrue on it. As for the amount, the Minnesota Supreme Court indicated in *Morrison* itself that the insured "in an action of this kind ought to be permitted to recover

---

[1] Select Comfort argues in the alternative that it may also recover its attorneys' fees and expenses under the supplementary payment provisions of the CGL policies, in accordance with *Security Mutual Casualty Company v. Luthi*, 226 N.W.2d 878 (Minn. 1975). Because Select Comfort's fees and expenses are recoverable under *Morrison*, the Court does not reach this issue.

whatever [attorneys' fees and] expenses he has been compelled to incur in asserting his rights . . . ." 142 N.W.2d at 647. As noted, Select Comfort seeks a total of $849,208, which consists of $767,084 in attorneys' fees and $82,124 in expenses. Select Comfort argues that such an award is a reasonable product of the lodestar calculation, and it has submitted in support its attorneys' invoices and time records, their biographies, and a number of documents from this litigation.

In response, Arrowood contends, generally and conclusorily, that the award Select Comfort seeks is "entirely disproportionate to the nature of the legal work necessary to prosecute this case" and suggests that "the Court should carefully scrutinize whether Select Comfort's proposed fees and expenses are justified." The Court declines that invitation. This is an adversarial proceeding between two represented parties. The Court has no duty to Arrowood to pore over the hundreds of pages of records Select Comfort has submitted, searching for potentially objectionable billing. The award Select Comfort requests is not facially unreasonable, is supported by detailed documentation, and seems commensurate with the rate of compensation that the jury found to be the reasonable cost of litigating the *Stearns* action.

> As Select Comfort aptly notes, the Supreme Court has emphasized that a
>
> fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. . . . But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (internal quotation marks and citation omitted). Overall, of course, Select Comfort achieved a highly favorable outcome in this case. It sued to recover the costs of the *Stearns* defense that Arrowood had refused to reimburse. Through motion practice, Select Comfort earned a summary judgment on the conflict of interest issue and succeeded in having Arrowood's counterclaim dismissed. And it prevailed handsomely on its

13

own claim after four days of trial, persuading a jury that Arrowood should reimburse it for an additional $407,000. Arrowood's contention that this was a simple case in which "the only issue . . . was the reasonableness of fees in *Stearns*" is incorrect, and it is belied by Arrowood's own actions in disputing the conflict of interest issue and pursuing a counterclaim relating to the amount it paid towards the *Stearns* settlement.

At bottom, Arrowood does not argue that any of the hourly rates charged by Select Comfort's attorneys and their paralegals were too high, that any particular hours they expended on this case were unnecessary, or that any particular litigation expense was unjustified. In the absence of any such specific objections from Arrowood and in light of the overall success Select Comfort achieved, the Court concludes that the award Select Comfort requests is reasonable.

The final issue, then, is interest. Select Comfort seeks the addition of pre-judgment interest on this award, which it argues is governed exclusively by Minn. Stat. § 549.09. However, at subdivision 1(b)(5), Minn. Stat. § 549.09 specifically states that "preaward . . . interest shall not be awarded on . . . that portion of any . . . award . . . which is founded upon . . . costs, . . . attorney fees, or other similar items added by the court . . . ." Minnesota courts have explained that Minn.Stat. § 549.09, subd. 1(b)(5) "does not preclude adding prejudgment interest to a judgment for attorney fees when the fees are the subject matter of the lawsuit." *Gaughan v. Gaughan*, 450 N.W.2d 338, 344 (Minn. Ct. App. 1990). But Select Comfort's *Morrison* award – regardless of the rationale underlying it – is not the subject matter of this lawsuit; its *Stearns* defense costs are. To the extent that the unpublished decisions offered by Select Comfort reach a different conclusion, the Court does not find them persuasive. Select Comfort's *Morrison* award falls squarely within the plain language of the exclusion at Minn. Stat. § 549.09, subdivision

14

1(b)(5), and Select Comfort cites no other authority by which pre-judgment interest may be added.

The Court therefore declines to award pre-judgment interest on Select Comfort's award for the attorneys' fees and expenses it incurred in this action. As for post-judgment interest on that award, 28 U.S.C. § 1961, as indicated above, governs in this diversity action. *See El-Tabech v. Clarke*, 616 F.3d 834, 841 n.2 (8th Cir. 2010) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees.") (quoting *Jenkins v. Missouri,* 931 F.2d 1273, 1275 (8th Cir. 1991)).

## **Conclusion**

For the reasons and in the manner discussed above, Select Comfort's Motion for an Award of Attorneys' Fees, Costs, and Interest from Arrowood is granted in part and denied in part. Select Comfort recovers from Arrowood $699,633 on its breach of contract claim, inclusive of pre-judgment interest calculated under Minn. Stat. § 60A.0811, and $849,208 in attorneys' fees and costs. Post-judgment interest will accrue on both of those amounts in accordance with 28 U.S.C. § 1961.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Select Comfort Corporation's Amended Motion for an Award of Attorneys' Fees, Costs, and Interest [ECF No. 364] is GRANTED IN PART and DENIED IN PART consistent with the memorandum above.

2. The Order [ECF No. 355] and Judgment [ECF No. 357] entered on June 30, 2015 are VACATED.

3. Arrowood Indemnity Company shall pay Select Comfort Corporation $1,548,841, with post-judgment interest accruing on that amount at the applicable federal interest rate under 28 U.S.C. § 1961 from the date judgment is entered in accordance with this order until payment is made. That $1,548,841 consists of: $407,000 awarded in accordance with the jury's special verdict; $292,633 in pre-judgment interest on that $407,000, calculated at a rate of 10% per annum from June 11, 2008 through August 19, 2015 under Minn. Stat. § 60A.0811; and $849,208 in attorneys' fees and expenses incurred in this action.

4. Arrowood Indemnity Company's third-party claims against St. Paul Mercury Insurance Company are DISMISSED WITH PREJUDICE pursuant to those parties' Stipulation for Dismissal with Prejudice [ECF No. 353].

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 20, 2015                     s/Joan N. Ericksen
                                           JOAN N. ERICKSEN
                                           United States District Judge